# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

SHERYL ANN RAFFILE,

      Plaintiff,

vs.                                 No. CIV 11-0459 JB/WPL

EXECUTIVE AIRCRAFT MAINTENANCE,
a/k/a COPPER STATE TURBINE ENGINE
COMPANY; BARRON THOMAS
SCOTTSDALE, LLC; STEVEN W.
SAUNDERS; and DOES 1-50, Inclusive,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) Defendant Executive Aircraft

Maintenance's Motion to Dismiss for Lack of Personal Jurisdiction, filed June 1, 2011 (Doc.

4)("Executive Aircraft MTD"); and (ii) Defendant Steven W. Saunders' Motion to Dismiss for Lack

of Personal Jurisdiction, filed in state court on April 13, 2011 (Doc. 12, Ex. A at 16-19)("Saunders'

MTD"). The Court held a hearing on November 15, 2011. The primary issues are: (i) whether the

Court has personal jurisdiction over Defendant Executive Aircraft Maintenance ("Executive

Aircraft"); and (ii) whether the Court has personal jurisdiction over Defendant Steven W. Saunders.

The Court will grant Executive Aircraft's and Saunders' motions.

## FACTUAL BACKGROUND[1]

Executive Aircraft is an Arizona corporation, and its principal place of business is in

---

[1] The facts are undisputed. Raffile's response to the Executive Aircraft Motion to Dismiss does not raise any disputes of fact and none were discussed at the November 15, 2011 hearing. See Response to Defendant Executive Aircraft Maintenances' Motion to Dismiss for Lack of Personal Jurisdiction at 1-5, filed June 20, 2011 (Doc. 13).

Arizona.  See Affidavit of James Nordstrom ¶ 5, at 1 (executed May 27, 2011), filed June 1, 2011 (Doc. 4)("Nordstrom Aff.").  Executive Aircraft provides "certain aircraft maintenance and inspection services in Arizona."  See Nordstrom Aff. ¶ 6, at 1.  Executive Aircraft "is not licensed to do business in the State of New Mexico; it does not pay taxes in New Mexico; and it does not own property in New Mexico." Nordstrom Aff. ¶ 8, at 1.  "Executive Aircraft does not directly or intentionally advertise or solicit consumers in New Mexico."  Nordstrom Aff. ¶ 9, at 1.  It "does not have any employees, agents, representatives, statutory agents, physical presence, or offices, or property in New Mexico."  Nordstrom Aff. ¶ 7, at 1.  Steven W. Saunders is a resident of Nevada. See Complaint ¶ 4, at 2.

On June 2, 2009, Christopher Morrell, a non-party and Connecticut resident, contracted with Executive Aircraft in Arizona to perform inspection and maintenance/repair services in Arizona on a Beechcraft model 35-A33 Bonanza aircraft.  See Affidavit of James Butler ¶¶ 6-8, at 1 (executed June 1, 2011), filed June 1, 2011 (Doc. 4); Contract between Executive Aircraft Maintenance and Chris Morrell at 1, filed June 1, 2011 (Doc. 4).  Executive Aircraft performed the inspections, service, and repairs in Glendale, Arizona and completed them on July 7, 2009.  See Nordstrom Aff. ¶¶ 12,14 at 2.  Morrell purchased the aircraft on July 9, 2009, from Saunders, through Defendant Barron Thomas Scottsdale, LLC, an aircraft broker company located in Scottsdale, Arizona.[2]  See Complaint ¶¶ 3, 4 at 4, ¶¶ 19, 20 at 6.  See also Answer of Barron Thomas Scottsdale, LLC ¶¶ 7-8, at 5, filed April 11, 2011 (Doc. 12, Ex. A)(stating that "Defendant Thomas admits that he was the

_____

[2] Although, at the November 15, 2011 hearing, Saunders' counsel represented that Saunders was only a previous owner of the Beechcraft and that he sold the plane to Barron Thomas Scottsdale, LLC, see Transcript of Hearing at 7:10-16 (November 15, 2011)( Racca).  Saunders did not, however, submit an affidavit attesting to that fact; thus, the Court must accept as true the allegations in the Complaint for the purpose of analyzing the jurisdictional issues.

individual that sold the subject aircraft to Mr. Christopher Morrell" and that "the previous owner of the aircraft was Steven Saunders").  On July 10, 2009, Morrell was piloting the aircraft when it lost power and crashed near Las Vegas, New Mexico.  See Complaint ¶¶ 10-12, at 5.

Plaintiff Sheryl Ann Raffile is a Connecticut resident who was a passenger in the aircraft when it crashed.  See Complaint ¶¶1, 10, at 1, 5.  She contends that Executive Aircraft failed to "exercise reasonable care in the testing, inspection, and maintenance of all component parts of the aircraft," Complaint ¶ 38, at 8, and that all Defendants failed to adequately warn Morrell about certain defects in the aircraft that made it "not capable of sustaining airworthy flight," Complaint ¶ 31, at 6.  She also bases her claims on the theory of strict product liability.  See Complaint ¶¶ 23-24, at 4-5.

## PROCEDURAL BACKGROUND

Raffile filed her lawsuit in New Mexico state court in a case styled Raffile v. Executive Aircraft Maintenance, No. D412CV 201100099 (Fourth Judicial Court, San Miguel County , State of New Mexico), filed February 28, 2011 (Doc. 1-1).  Executive Aircraft timely removed the case to federal court, based on diversity jurisdiction.  See Notice of Removal by Executive Aircraft Maintenance ¶ 15, at 4, filed May 31, 2011 (Doc. 1).

Executive Aircraft and Saunders move the Court, pursuant to rule 12(b)(2) of the Federal Rules of Civil Procedure, to dismiss this action for lack of personal jurisdiction.  See Executive Aircraft MTD at 1; Saunders' MTD at 17.  Both Executive Aircraft and Saunders contend that the Court should dismiss Raffile's Complaint against them, because she has failed to show that they have sufficient minimum contacts with New Mexico to support jurisdiction under the Due Process Clause and, therefore, taking jurisdiction over them in New Mexico is unconstitutional.  See

Executive Aircraft MTD at 4; Saunders' MTD at 18.  Both Executive Aircraft and Saunders support

their motions with memoranda of points and authorities, and Executive Aircraft also filed affidavits

and a copy of the Contract between Executive Aircraft and Morrell.  Raffile filed a response arguing

that it was foreseeable that the aircraft would be used in the states surrounding Arizona, including

New Mexico.  See Response to Defendant Executive Aircraft Maintenance's Motion to Dismiss for

Lack of Personal Jurisdiction at 5, filed June 20, 2011 (Doc. 13)("Response").  Raffile did not file

any affidavits or exhibits, and  Executive Aircraft and Saunders filed notices that briefing was

complete.  See Notice of Completion of Briefing, filed July 5, 2011 (Doc. 18); Notice of Completion

of Briefing, filed July 11, 2011 (Doc. 19).

　　　　At the November 15, 2011 hearing on the motions, however, Raffile's counsel admitted that

her response "certainly falls short of the issues raised in the motion" and asked "for a little leeway

to address some of the issues of the motion separate from our response."  Transcript of Hearing at

4:15-22 and 8:24 to 9:9 (taken November 15, 2011)(Heath)("Tr.").[3]  Counsel then submitted,

without objection,  fifteen exhibits, including Morrell's affidavit, in an attempt to show that the

Court has personal jurisdiction over Executive Aircraft.

## LAW REGARDING PERSONAL JURISDICTION

　　　　The plaintiff has the burden of proving personal jurisdiction.  The court's jurisdiction may

rest on specific or general personal jurisdiction.  Due process, however, limits any state statutory

basis of personal jurisdiction.

---

[3]The Court's citations to the transcript are to the Court Reporter's original, unedited version.
A final version may have slightly different line or page numbers.

1.      **Burden of Proof.**

"[W]hen the court's jurisdiction is contested, the plaintiff has the burden of proving

jurisdiction exists." Wenz v. Memery Crystal, 55 F.3d 1503, 1505 (10th Cir. 1995).

> When jurisdiction is "decided on the basis of affidavits and other written materials,
> the plaintiff need only make a prima facie showing" of facts that would support the
> assertion of jurisdiction. [Wenz v. Memery Crystal, 55 F.3d at 1505].   "The
> allegations in the complaint must be taken as true to the extent they are
> uncontroverted by the defendant's affidavit." Behagen v. Amateur Basketball Ass'n,
> 744 F.2d at 733.  When, however, a defendant presents credible evidence through
> affidavits or other materials suggesting the lack of personal jurisdiction, the plaintiff
> must come forward with sufficient evidence to create a genuine dispute of material
> fact on the issue.  See Doe v. Nat'l Med. Servs., 974 F.2d 143, 145 (10th Cir. 1992).
> Only if the plaintiff meets the obligation of contesting the credible evidence that the
> defendant presents does the court resolve the factual disputes in favor of the plaintiff.
> See Wenz v. Memery Crystal, 55 F.3d at 1505; Behagen v. Amateur Basketball
> Ass'n, 744 F.2d at 733.

Clark v. Meijer, Inc., 376 F.Supp.2d 1077, 1082 (D.N.M. 2004)(Browning,  J.).  When, however,

"personal jurisdiction is assessed in an evidentiary hearing . . . , the plaintiff generally must

establish, by a preponderance of the evidence, that personal jurisdiction exists." Dudnikov v. Chalk

& Vermilion Fine Arts, Inc., 514 F.3d 1063, 1070, n.4 (10th Cir. 2008).

> Where a federal lawsuit is based on diversity of citizenship, the court's jurisdiction
> over a nonresident defendant is determined by the law of the forum state.  Fed. R.
> Civ. P. 4(e).  The party seeking to establish personal jurisdiction over a foreign
> litigant must make two showings: first, that the exercise of jurisdiction is sanctioned
> by the state's long-arm statute; and second, that it comports with the due process
> requirements of the Fourteenth Amendment.

Marcus Food Co. v. DiPanfilo, No. 10-3285, 2011 WL 5084997, at *3 (10th Cir. Oct. 27, 2011).

New Mexico's long-arm "statute extends the jurisdictional reach of New Mexico courts as far as

constitutionally permissible." Tercero v. Roman Catholic Diocese of Norwich, Conn., 132 N.M.

312, 315, 48 P.3d 50, 54 (2002). Consequently, the court "need not conduct a statutory analysis apart

from the due process analysis." Marcus Food Co. v. DiPanfilo, 2011 WL 5084997, at *3 (internal

quotation marks omitted).

**2.      General and Specific Jurisdiction.**

Depending on the character and extent of a defendant's contacts, a court may exercise specific or general personal jurisdiction.  See Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 (1984).

> General jurisdiction is based on an out-of-state defendant's "continuous and systematic" contacts with the forum state, and does not require that the claim be related to those contacts.  Specific jurisdiction, on the other hand, is premised on something of a quid pro quo: in exchange for "benefitting" from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts.

Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d at 1078.  Thus, "[s]uch contacts may give rise to personal jurisdiction over a non-resident defendant either generally, for any lawsuit, or specifically, solely for lawsuits arising out of particular forum-related activities."  Shrader v. Biddinger, 633 F.3d 1235, 1239 (10th Cir. 2011).

**3.      Due Process and Personal Jurisdiction.**

> The due process analysis is also two-fold:  First, [the defendant] must have "minimum contacts" with the forum state, demonstrating that he "purposefully availed" himself of the protections or benefits of the state's laws and "should reasonably anticipate being haled into court there."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473-76 . . . (1985); see also Emp'rs Mut. Cas. Co., 618 F.3d at 1159-60 (reiterating the Burger King standard).  Although agreements alone are likely to be insufficient to establish minimum contacts, "'parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities.'"  TH Agric. & Nutrition, LLC v. Ace Eur. Grp. Ltd., 488 F.3d 1282, 1287-88 (10th Cir. 2007) (quoting Burger King, 471 U.S. at 473, 478 . . . .

Marcus Food Co. v. DiPanfilo, 2011 WL 5084997, at *4.

A defendant may reasonably anticipate being subject to suit in the forum state "if the defendant has 'purposefully directed' his activities at residents of the forum, and the

litigation results from alleged injuries that 'arise out of or relate to' those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 . . . (1985) (internal citation omitted); see also Hanson v. Denckla, 357 U.S. 235, 253 . . . (1958) ( "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State.").

TH Agric. & Nutrition, LLC v. Ace Eur. Grp. Ltd., 488 F.3d at 1287-88.  Thus, to establish specific personal jurisdiction that satisfies due process, a plaintiff must present evidence of "three salient factors that together indicate 'purposeful direction': (a) an intentional action . . . that was (b) expressly aimed at the forum state . . . with (c) knowledge that the brunt of the injury would be felt in the forum state."  Shrader v. Biddinger, 633 F.3d at 1239-40 (internal quotation marks omitted). The Supreme Court of the United States has held, however, that the mere foreseeability of harm occurring in a particular forum will not support a finding of minimum contacts.  See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295 (1980)(holding that, although "an automobile is mobile by its very design and purpose," thus indicating that it is foreseeable that a particular automobile may cause injury in a forum state, "'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause").  In Roberts v. Piper Aircraft Corp., 100 N.M. 363, 670 P.2d 974 (Ct. App. 1983), the Court of Appeals of New Mexico similarly rejected the argument that foreseeability could establish minimum contacts, and found no personal jurisdiction or minimum contacts in the following circumstances:

> [T]he record is devoid of any contact between Scenic Aviation and New Mexico. Scenic Aviation is a fixed-base operator selling aviation fuel in Las Vegas, Nevada. There is no evidence that Scenic Aviation advertises in New Mexico, or sells fuel to New Mexico residents.  Without "contacts, ties, or relations" with New Mexico the fact that fuel sold by Scenic Aviation found its way into our state does not support a valid exercise of personal jurisdiction.

100 N.M. at 367, 670 P. 2d at 948.  "[T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State.  Rather, it is that the

-7-

defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. at 297.  As the United States Court of Appeals for the Tenth Circuit has further explained, because "mere foreseeability" is not sufficient to establish minimum contacts, a plaintiff "must establish . . . not only that defendants foresaw (or knew) that the effects of their conduct would be felt in the forum state, but also that defendants undertook intentional actions that were expressly aimed at that forum state."  Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d at 1077.

Similarly, to find general jurisdiction over a defendant, contacts must be "continuous and systematic" -- therefore, "[s]imply because a defendant has a contractual relationship and business dealings with a person or entity in the forum state does not subject him to general jurisdiction there;" "correspondence with a forum resident does not support general jurisdiction;" and "sporadic or isolated visits to the forum state will not subject the defendant to general jurisdiction" because a "[defendant's] lack of a regular place of business in [the forum state] is significant, and is not overcome by a few visits."  Shrader v. Biddinger, 633 F.3d at 1247.  "[G]eneral jurisdiction over a web site that has no intrinsic connection with a forum state requires commercial activity carried on with forum residents in such a sustained manner that it is tantamount to actual physical presence within the state."  633 F.3d at 1246.  When analyzing minimum contacts sufficient for general jurisdiction in regard to the operation of a web site, the Tenth Circuit has referred to, without adopting, a "sliding scale" framework.  633 F.3d at 1242 n.5.

> At one end of the spectrum are situations where a defendant clearly does business over the Internet.  If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper.  At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions.  A passive Web site that does little more

than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

633 F.3d 1242 n.5 (internal quotation marks omitted).

If [the defendant] is found to have the requisite minimum contacts with [the forum state], then we proceed to the second step in the due process analysis: ensuring that the exercise of jurisdiction over him "does not offend 'traditional notions of fair play and substantial justice.'" See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 . . . (1980) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 . . . (1945)). [The defendant] bears the burden at this stage to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." See Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1080 (10th Cir. 2008). We consider the following five factors, . . . in deciding whether the exercise of jurisdiction would be fair:

(1) the burden on the defendant, (2) the forum state's interests in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states or foreign nations in furthering fundamental social policies.

Id. (brackets omitted); see also OMI Holdings, Inc., 149 F.3d at 1095 (applying these factors in a case involving a Canadian corporation). "[T]he reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction." TH Agric. & Nutrition, LLC, 488 F.3d at 1292 (internal quotation marks and brackets omitted).

Marcus Food Co. v. DiPanfilo, 2011 WL 5084997, at *4-5.

4. **New Mexico's Long-Arm Statute.**

New Mexico's long-arm statute provides, in relevant part, that its courts may exercise personal jurisdiction over a party "whether or not a citizen or resident of this state . . . as to any cause of action arising from: (1) the transaction of business within this state . . . [or] (3) the

commission of a tortious act within this state . . . ."  NMSA 1978 § 38-1-16.  For New Mexico courts

> to exercise personal jurisdiction over nonresident, out-of-state defendants, the
> following three-part test must be satisfied:
>
> > (1) the defendant's act must be one of the five enumerated in the
> > long-arm statute; (2) the plaintiff's cause of action must arise from
> > the act; and (3) minimum contacts sufficient to satisfy due process
> > must be established by the defendant's act.
>
> State Farm Mut. Ins. Co. v. Conyers, 109 N.M. 243, 244, 784 P.2d 986, 987 (1989)
> (citing Salas v. Homestake Enterprises, Inc., 106 N.M. 344, 345, 742 P.2d 1049,
> 1050 (1987)).  The first and third step of this test have been "repeatedly equated"
> with the due process standard of "minimum contacts."  Kathrein v. Parkview
> Meadows, Inc., 102 N.M. 75, 76, 691 P.2d 462, 463 (1984) (citing Telephonic, Inc.
> v. Rosenblum, 88 N.M. 532, 534, 543 P.2d 825, 827 (1975)).  Because we have
> interpreted the long-arm statute as extending our personal jurisdiction as far as
> constitutionally permissible, United Nuclear Corp. v. General Atomic Co., 91 N.M.
> 41, 42, 570 P.2d 305, 306 (1977), it is not necessary to determine whether the
> [defendants] transacted business within New Mexico in any technical sense.  When
> the state courts have construed the state long-arm statute as being coextensive with
> the requirements of due process, "the usual two-step analysis collapses into a single
> search for the outer limits of what due process permits.

F.D.K. v. Hiatt, 117 N.M. 461, 463, 872 P.2d 879, 881 (1994).  "When negligent acts occur outside

New Mexico which cause injury within the state, a 'tortious act' has been committed for purposes

of the long-arm statute."  Tercero v. Roman Catholic Diocese of Norwich, Conn., 132 N.M. at 319,

48 P.3d at 57.  "As with the transaction of business analysis, rather than engage in a technical

analysis of whether the defendant committed a tortious act, we must equate the 'tortious act' which

the defendant is alleged to have committed with minimum contacts to determine if due process has

been satisfied."  132 N.M. at 319, 48 P.3d at 57 (alteration omitted)(internal quotation marks

omitted).

## **ANALYSIS**

Raffile has not established that Executive Aircraft or Saunders have sufficient minimum

contacts to support a theory of general or specific personal jurisdiction over them.  Raffile's analysis is based on products-liability cases, but she principally contends that Executive Aircraft and Saunders committed the torts of negligence and failure to warn in Arizona that ultimately caused injury to her in New Mexico.  See Complaint ¶ 23, at 4; ¶¶ 30-31, at 8; ¶¶ 36-39, at 7-8.

## I.    NEW MEXICO DOES NOT HAVE PERSONAL JURISDICTION OVER EXECUTIVE AIRCRAFT.

As Executive Aircraft and Saunders point out, Raffile alleged no facts in her Complaint and presented no other evidence sufficient to indicate that they have sufficient minimum contacts with New Mexico that will support personal jurisdiction over them.  Therefore, it would violate the Due Process Clause for the Court to exert jurisdiction over them.  The Court will grant the motions to dismiss.

### A.    NEW MEXICO DOES NOT HAVE GENERAL OR SPECIFIC JURISDICTION OVER EXECUTIVE AIRCRAFT.

At the November 15, 2011 hearing, the parties agreed that the central issue in this case is whether New Mexico has specific jurisdiction over the Defendants.  See Tr. at 4:15-22 (Worischeck) and 8:24-9:9 (Heath).   In her briefing, Raffile only discussed whether Executive Aircraft had committed an enumerated act under New Mexico's long-arm statute, but she did not discuss the determinative issue of minimum contacts, see Response at 4-5,  or point to any facts indicating that Executive Aircraft had "'purposefully directed' [its] activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985).  Nor did she demonstrate that Executive Aircraft committed any other intentional action "expressly aimed at the forum state . . .  with . . . knowledge that the brunt of the injury would be felt in the forum state," Shrader v. Biddinger, 633 F.3d at 1239-

40, that it had purposefully availed itself of the benefits and protections of New Mexico laws, see Hanson v. Denckla, 357 U.S. at 253, or had such significant consistent and systematic business contacts in New Mexico that the Court could assert specific or general jurisdiction over it, see Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d at 1078.  Instead, Raffile argued only that Executive Aircraft committed torts that resulted in her injury in New Mexico, and that "it was foreseeable by [Executive Aircraft] that the subject aircraft would be used for air transportation in not only Arizona, but also in the surrounding States, specifically New Mexico."  Response at 5.

At oral argument, despite the concession that only specific jurisdiction was at issue, Raffile submitted fifteen exhibits.  Exhibit 1 shows that Executive Aircraft's website states that it provides "global service" to customers who reside in various nations who "ship your parts or engines to EAM for repair, or we orchestrate a 'road trip' to your facility to repair an aircraft."  Exhibit 2 is an Executive Aircraft's "contact form" that requests information from a prospective customer, including "country."  Exhibits 3, 4, and 5 are "press releases" or articles from Executive Aircraft's website, Aviators Hot Line website, and Director Of Maintenance Magazine's website stating that Executive Aircraft was established "to support customers in 24 countries, from locations in Arizona and Alaska."  Exhibit 6 is a "media kit" from Director Of Maintenance Magazine, which has as its purpose assisting people and companies "to reach the management of aircraft maintenance facilities."  Exhibit 7 is an article from Aviation International News' official website stating that Executive Aircraft has been authorized to overhaul various Honeywell turboprop engines.  Exhibit 8 states that Aviation International News covers aviation news and trade shows world wide.  Exhibit 9 is Aviation International News' "media kit" that states that Aviation International News has a "world wide distribution that precisely matches the distribution of turbine business airplanes."

Exhibit 10 is a document from the National Agricultural Aviation Association ("NAAA") stating that Executive Aircraft is one of its "allied member companies," and Exhibit 11 states that NAAA has 1500 members in 46 states.  Exhibit 12 is Executive Aircraft's ad in the National Business Aviation Association's directory from its 2011 annual meeting.  Exhibit 13 is Executive Aircraft's Facebook page stating that it provides "airline industry services" in "Scottsdale, Arizona."  Raffle's counsel argued at the hearing that these thirteen exhibits demonstrate that Executive Aircraft does not limit its services to states other than New Mexico and that Executive Aircraft's advertisements are widely distributed, and, therefore, the Court should find that Executive Aircraft purposefully directs its advertising for services to New Mexico residents through these websites and publications. See Tr. at 12:1-14:14 (Heath).  He argued that the negative ruling in World-wide Volkswagen should be distinguished, because it is not unfair to hale Executive Aircraft into New Mexico courts when its advertisements could reach New Mexico consumers.  See Tr. at 15:5-16:25 (Heath).  He noted that the New Mexico Court of Appeals found that New Mexico courts had jurisdiction over one of the defendants in the Roberts v. Piper Aircraft case, because that defendant advertised in a national trade journal circulated in New Mexico, the company had performed some work for other New Mexico residents, and, therefore, the company had solicited business in New Mexico and had the minimum contacts to satisfy due process.  See Roberts v. Piper Aircraft, 100 N.M. at 367-68, 670 P.2d at 978-79.  Because the exhibits Raffle submits relate only to Executive Aircraft's general systematic or continuous business contacts, and not to the specific torts it is alleged to have committed, this argument goes to general, and not specific, jurisdiction, see Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d at 1078 n.4.  Raffle, on the other hand, concedes that this Court does not have general jurisdiction over Executive Aircraft and that, if the Court has personal

-13-

jurisdiction over Executive Aircraft, jurisdiction is based on specific personal jurisdiction, see Tr. at 8:24-9:9 (Heath).

In response, Executive Aircraft contends that the existence of indirect advertising through web sites is not sufficient to establish minimum contacts where there is no evidence that Executive Aircraft targeted New Mexico, and that Raffile has not rebutted Nordstrom's affidavit that Executive Aircraft "does not directly or intentionally advertise or solicit consumers in New Mexico." Nordstrom Aff. ¶ 9, at 1.  The Court agrees.

At the hearing, the parties all agreed with the Court that the Court is not bound by the New Mexico Court of Appeals' opinions regarding the federal question whether minimum contacts exist to satisfy due process under the federal constitution.  See Tr. at 5:9-13 (Worischeck), 10:12-15 (Heath).  The Court finds that the more recent cases from the Tenth Circuit are binding precedent.

In Dudnikov v. Chalk & Vermilion Fine Arts, Inc., a specific-jurisdiction case, see 514 F.3d at 1070-71 (noting that plaintiffs had not appealed adverse ruling on general jurisdiction and "cabin[ing] our inquiry in this case to what 'minimum contacts' means for purposes of specific jurisdiction"), the Tenth Circuit noted the distinction between tort claims and contract claims in jurisdictional analyses.

> In the tort context, we often ask whether the nonresident defendant "purposefully directed" its activities at the forum state; in contract cases, meanwhile, we sometimes ask whether the defendant "purposefully availed" itself of the privilege of conducting activities or consummating a transaction in the forum state.  In all events, the shared aim of "purposeful direction" doctrine has been said by the Supreme Court to ensure that an out-of-state defendant is not bound to appear to account for merely "random, fortuitous, or attenuated contacts" with the forum state.

514 F.3d at 1071.  In tort cases, "the forum state itself must be the 'focal point of the tort.'"  Id. at 1075 n.9.  The defendant in Dudnikov v. Chalk & Vermilion Fine Arts, Inc. intentionally directed

its tortious acts at a Colorado resident; its "intended end [was] cancelling plaintiffs' auction in Colorado;" and "defendants e-mailed plaintiffs directly in Colorado threatening them with suit in federal court." 514 F.3d at 1075. The Tenth Circuit concluded that Colorado courts could properly assert personal jurisdiction, because the defendant/commercial actor's "efforts are 'purposefully directed' toward residents of another State, [and the Supreme Court had] consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." 514 F.3d at 1075-76 (internal quotation marks omitted). See id. at 1076 (noting that specific jurisdiction existed in Colorado, because the defendants "are alleged to have intended their extra-forum conduct to reach and affect plaintiffs' business operations in Colorado"). Similarly, in Silver v. Brown, 382 F.App'x 723 (10th Cir. 2010)(unpublished), the Tenth Circuit concluded that New Mexico had specific personal jurisdiction over an out-of-state defendant, because the defendant intentionally and purposefully posted a defamatory blog about a New Mexico resident and his New Mexico company, while knowing "that the brunt of the injury to [the New Mexico resident] would be felt in New Mexico." 382 F.App'x at 729-30. In the specific-jurisdiction tort context, the Tenth Circuit focused on the facts that the defendant who committed the tort actually knew that the plaintiff he was intentionally negatively affecting was located in New Mexico and that the defendant "conducted his business [which was also harmed] from there." 382 F.App'x at 730.

Here, neither Raffile nor Morrell are residents of New Mexico, and there are no facts or evidence to indicate that Executive Aircraft purposefully directed its aircraft service activities that are allegedly associated with Raffile's injuries toward New Mexico residents or to the State. This case, therefore, is factually distinguishable from Dudnikov v. Chalk & Vermilion Fine Arts, Inc. and Silver v. Brown. Exhibits 1-13 do not provide any evidence that Executive Aircraft purposefully

directed any of its activities or advertising toward New Mexico residents or that Raffle's injuries arose out of Executive Aircraft's forum-related activities, see Shrader v. Biddinger, 633 F.3d at 1239, in a way giving rise to specific jurisdiction over it.

Nor are there sufficient facts to demonstrate general jurisdiction.  Raffle points to Roberts v. Piper Aircraft, in which the Court of Appeals of New Mexico concluded that New Mexico had general personal jurisdiction over Custom Airmotive, an out-of-state company that repaired airplane engines, on two facts: (i) the president of the company admitted that the company, "on limited occasions, performed aircraft repair and overhaul operations for residents of the State of New Mexico," but that the work performed was "minimal"; and (ii) he admitted that, "[p]rior to the accident alleged in this suit, Custom Airmotive did advertise in national aircraft publications, namely Trade-A-Plane, and Aircraft Mechanic Journal, which publications your Affiant is informed to believe are circulated in the State of New Mexico." 100 N.M. at 367-68, 670 P.2d at 979.   The Court of Appeals concluded that these two categories of contacts were sufficient minimum contacts to satisfy due-process concerns, even though Custom Airmotive did not have a telephone listing in New Mexico and it required the customer "to ship the aircraft component to it in Oklahoma."  100 N.M. at 367-368, 670 P.2d at 979.  Raffle suggests that, because she can show that Executive Aircraft has advertised in national trade magazines, Executive Aircraft has had the minimum contacts to satisfy due process.

The Court disagrees that advertising in national trade magazines is enough to constitute minimum contacts.  In Shrader v. Biddinger, the Oklahoma plaintiff brought tort claims for defamation against non-residents in Oklahoma, which derived "from an email drafted by [defendant] Mr. Stewart briefly explaining why the two parted ways."  633 F.3d at 1237-38.

> Mr. Stewart sent the email to a list of his customers.  Mr. Biddinger [another defendant] then expanded its audience by posting it to a traders' forum on the Wave59 web site in response to an inquiry about Mr. Shrader's materials.  Finally, the email remained accessible on the forum for some time as a result of the Beann defendants' failure to promptly remove it.

633 F.3d at 1238.  All three defendants moved for dismissal based on the absence of personal jurisdiction.  The Court noted that there is an "overarching requirement of continuous and systematic contacts for general jurisdiction." 633 F.3d at 1239.  The Court noted:

> A number of circuits have addressed personal jurisdiction in the internet context, considering whether, when, and how such peculiarly non-territorial activities as web site hosting, internet posting, and mass emailing can constitute or give rise to contacts that properly support jurisdiction over the host, poster, or sender. The basic problem with relating such activities directly to the general principles developed pre-internet is that, in a sense, the internet operates "in" every state regardless of where the user is physically located, potentially rendering the territorial limits of personal jurisdiction meaningless.

633 F.3d at 1240.  To avoid an "untenable result" of making every person who places information on the Internet subject to personal jurisdiction in every State that the information can reach, the Court held that the analysis of personal jurisdiction had to be adapted "by placing emphasis on the internet user or site intentionally directing his/her/its activity or operation at the forum state rather than just having the activity or operation accessible there." 633 F.3d at 1240 (emphasis in original).  Thus, the Tenth Circuit adopted the principle that

> [a] State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts.  Under this standard, a person who simply places information on the Internet does not subject himself to jurisdiction in each State into which the electronic signal is transmitted and received.  Such passive Internet activity does not generally include directing electronic activity into the State with the manifested intent of engaging business or other interactions in the State thus creating in a person within the State a potential cause of action cognizable in courts located in the State.

-17-

Shrader v. Biddinger, 633 F.3d at 1240-41 (internal quotation marks omitted).  The Tenth Circuit held that "[t]he maintenance of a web site does not in and of itself subject the owner or operator to personal jurisdiction, even for actions relating to the site, simply because it can be accessed by residents of the forum state."  633 F.3d at 1241.  When "considering what 'more' could create personal jurisdiction for such activities, courts look to indications that a defendant deliberately directed its message at an audience in the forum state and intended harm to the plaintiff occurring primarily or particularly in the forum state."  633 F.3d at 1241.

The Tenth Circuit noted that, for general jurisdiction to be found, commercial contacts from a web site "must be of a sort that approximate physical presence in the state -- and engaging in commerce with residents of the forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders."  633 F.3d at 1243 (internal quotation marks omitted).  The Tenth Circuit noted that, while "operating a web site selling products to residents of a state <u>can</u> subject the seller to general jurisdiction in that state, depending on the nature and degree of commercial activity with the forum state[,] . . . case law sets the bar quite high, . . . denying general jurisdiction absent substantial sales."  633 F.3d at 1243 (emphasis original)(citing cases where the numbers were not substantial enough to establish general jurisdiction).  The Tenth Circuit held that

> the best general formulation for this niche of the law may have been provided by the district court in Oklahoma:  "A web site will subject a defendant to general personal jurisdiction only when the defendant has actually and deliberately used its website to conduct commercial transactions <u>on a sustained basis with a substantial number of residents</u> of the forum."  <u>Smith v. Basin Park Hotel, Inc.</u>, 178 F.Supp.2d 1225, 1235 (N.D. Okla. 2001)(emphasis added).

633 F.3d at 1243 (emphasis in original).  Although the plaintiff in <u>Shrader v. Biddinger</u> submitted exhibits "relating to commercial activity on the Wave59 site, which show that (1) he purchased

books, courses, and a data feed from Wave59; (2) another person from Tulsa purchased a book from Wave59; and (3) Wave59 advertized in a magazine called TradersWorld, which was available for purchase at a Tulsa bookstore," 633 F.3d at 1244, the Tenth Circuit held that "[t]his showing is clearly insufficient to warrant the exercise of general personal jurisdiction over the Beann defendants," noting that "[t]here is no indication that TradersWorld is an Oklahoma magazine.  We have repeatedly held that advertizing in nationally distributed magazines does not support general jurisdiction." 633 F.3d at 1243-44 & n.6.

As in Shrader v. Biddinger, Raffile has failed to show through Exhibits 1-13 Executive Aircraft's deliberate, continuous and systematic business contacts, such as deliberately using its web site "to conduct commercial transactions on a sustained basis with a substantial number of residents of the forum."  633 F.3d at 1243 (emphasis omitted).  There is no evidence that Executive Aircraft specifically directed its advertising to New Mexico or that the advertisements drummed up any work in New Mexico.  Because it is contrary to Shrader v. Biddinger's principles that "advertizing in nationally distributed magazines does not support general jurisdiction"; that "engaging in commerce with residents of the forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders"; and that a plaintiff must show that the defendant "has actually and deliberately used its website to conduct commercial transactions on a sustained basis with a substantial number of residents of the forum," 633 F.3d at 1243-44 & n.6 (emphasis original), the Court is concerned that the conclusion suggested in Roberts v. Piper Aircraft that advertising in a national trade magazine which reaches New Mexico and that performing a limited amount of work outside New Mexico for New Mexico residents -- satisfies the federal Due Process Clause's minimum-contacts test for general personal jurisdiction.

The Court concludes that, under <u>Dudnikov v. Chalk & Vermilion Fine Arts, Inc.</u> and <u>Shrader v. Biddinger</u>, Raffile cannot show that Executive Aircraft's general advertising on web sites or in national trade magazines are sufficient minimum contacts to support general personal jurisdiction over it.

At the hearing, Raffile submitted two additional exhibits in support of her claim that the Court has personal jurisdiction over Executive Aircraft.  Exhibit 14 is Morrell's affidavit.  In it, Morrell states that he "had just purchased the Beech aircraft, N4334W, from Barron Thomas Aviation and I had some maintenance performed on the aircraft, by Executive Aircraft Maintenance, while I was still in the Phoenix area."  Affidavit of Christopher Morrell ¶ 2, at 1 (executed November 15, 2011).  He "chose the mechanic that did the maintenance on the Beech Aircraft[,] partly because the mechanic was also a flight instructor who gave me a check out in the airplane."  Morrell Aff. ¶ 3, at 1.  After the maintenance was complete, Morrell began his flight back to Connecticut, but "[p]rior to leaving . . . I informed the mechanic at [Executive Aircraft] that I would be flying across the southern U.S. and then up the east coast to Connecticut . . . [and] that I would be flying over New Mexico."  Morrell Aff. ¶ 4, at 1; ¶ 5,at 2.

Exhibit 15 is typewritten notes of a "phone interview of James Butler" taken on July 15, 2009 by "Inspector Donald D. Halbert, ABQ FSDO."[4]  It states that Butler, who worked for Executive Aircraft, "talked to the pilot before he left" and that the pilot told him he "planned to follow Interstate 40 to Amarillo, TX, [to] spend the night . . . ."  Raffile's counsel obliquely argued at the hearing that these two exhibits demonstrate not only foreseeability, but that the presence of

---

[4] Raffile's counsel did not state who Inspector Donald D. Halbert is, but the Court assumes that he is the FAA inspector who investigated the crash.

the Beechcraft in New Mexico was not "fortuitous," thereby distinguishing it from the negative

ruling in World-Wide Volkswagen Corp. v. Woodson.  See Tr. at 15:5-16:21, 19:9-15 (Heath).

World-Wide Volkswagen Corp. v. Woodson is a products-liability case, in which the Supreme

Court used a stream-of-commerce analysis that does not appear to be applicable to Executive

Aircraft or Saunders.[5]  See 444 U.S. at 297-98 ("The forum State does not exceed its powers under

the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products

into the stream of commerce with the expectation that they will be purchased by consumers in the

forum State.").  Even if the stream-of-commerce analysis applied, however, as the Tenth Circuit

noted,

> [a]bsent at least the seller's foreknowledge that the buyer was going to take the
> product into a particular forum, the defendant cannot reasonably be said to have
> purposefully directed its activities at the forum.  The defendant's only contact, the
> presence of its product in the forum, is the result of the act of someone else and not

---

[5]Although Raffile brings her action for strict-products-liability against "all defendants," New
Mexico follows the Restatement (Third) of Torts: Products Liability, which provides:

> Liability of Commercial Seller or Distributor for Harm Caused by Defective
> Products
>
> > (a) One engaged in the business of selling or otherwise distributing products
> > who sells or distributes a defective product is subject to liability for harm to
> > persons or property caused by the product defect.
> >
> > (b) A product is defective if, at the time of sale or distribution, it contains a
> > manufacturing defect, is defective in design, or is defective because of
> > inadequate instructions or warnings.

Spectron Dev. Lab. v. Am. Hollow Boring Co., 123 N.M. 170, 174, 936 P.2d 852, 856 (Ct. App.
1997).  Because no facts indicate that either Executive Aircraft or Saunders are engaged in the
business of selling or distributing airplanes, or that Executive Aircraft manufactured any part of the
aircraft, it appears that they cannot be held liable for a manufacturing defect in the Beechcraft under
this theory.  Cases discussing general personal jurisdiction over manufacturers or companies that
place a defective product into the stream of commerce are therefore distinguishable.

the defendant's own intentional conduct.

Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d at 1074.  Telling an employee of Executive Aircraft where he was going to fly after Executive Aircraft had repaired the Beechcraft says little about what Executive Aircraft knew about the use of the plane in New Mexico when it signed a contract with a Connecticut resident to repair an airplane, and repaired the airplane in Arizona.  According to Raffile's Complaint, when Executive Aircraft made the repairs, Morrell did not own the airplane.  There is no indication either in the Morrell affidavit or in the Inspector's notes that, before Executive Aircraft agreed to service and repair the Beechcraft for Morrell, that Executive Aircraft knew that Morrell was definitely going to purchase the airplane and intended to later fly the plane over New Mexico, or that Executive Aircraft intentionally directed its allegedly negligent conduct toward New Mexico.

The Court will, pursuant to rule 12(b)(2), dismiss Raffile's claims against Executive Aircraft because the Court lacks personal jurisdiction over Executive Aircraft.

### B.   THE COURT WILL DENY RAFFILE'S REQUEST FOR DISCOVERY.

At the November 15, 2011 hearing, Raffile's counsel requested a 120-day discovery period in which to attempt to find contracts showing that Executive Aircraft has repaired aircraft for New Mexico residents.  See Tr. at 17:1-7 (Heath).  The Court concludes that, not only is this request untimely, given that Plaintiff has had over five months to make such a request and allowed the briefing period to pass without making such a request, but that this fishing expedition would not likely result in evidence to show that Executive Aircraft initiated the kinds of continuous, systematic, and substantial commercial contacts that would give rise to general jurisdiction over it. See Shrader v. Biddinger, 633 F.3d at 1243 (stating that "engaging in commerce with residents of

the forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders").  Raffile did not request further discovery regarding Saunders' contacts with New Mexico.  Of course, if Raffile discovers, in its discovery against the remaining Defendant, more evidence that suggests specific jurisdiction over Executive Aircraft or Saunders, she may move the Court to reconsider or re-add Executive Aircraft and/or Saunders.

## II.    NEW MEXICO DOES NOT HAVE GENERAL OR SPECIFIC JURISDICTION OVER SAUNDERS.

As noted above, Raffile's Complaint states only that Saunders is a resident of Nevada, see Complaint ¶ 4, at 2, and that Defendant Barron Thomas Scottsdale, LLC sold the Beechcraft to Morrell on Saunders' "behalf," Complaint ¶ 20, at 6.  Raffile has not submitted any additional facts or evidence to suggest that Saunders had the minimum contacts with New Mexico to satisfy due process.  See Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d at 1070 & n.4.  At the hearing, Raffile's counsel did not attempt to rebut Saunder's contention that Raffile had alleged nothing to show that Saunder "had any contact with New Mexico, much less minimal contacts to give the court jurisdiction under the due-process clause of the constitution."  Tr. at 7:17-19 (Racca).  In response to a question from the Court about personal jurisdiction over Saunders, Raffile's counsel conceded, "I'm not sure we could, Judge."  Tr. at 19:11-21 (Court, Heath).  Because she has failed to meet her burden of establishing personal jurisdiction over Saunders, the Court will, pursuant to rule 12(b)(2), dismiss Raffile's claims against Saunders.  The Court lacks personal jurisdiction over Saunders.

**IT IS ORDERED** that: (i) Defendant Executive Aircraft Maintenance's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 4); and (ii) Defendant Steven W. Saunders' Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 12, Ex. A at 16-19), are granted.  Raffile's claims

against them will be dismissed without prejudice.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Steven Errante
Lynch, Traub, Keefe & Errante, P.C.
New Haven, Connecticut

*--and--*

Patrick E. Bailey
Keith Lovendosky
Bailey & Partners, P.C.
Santa Monica, California

*--and--*

Turner W. Branch
Frank V. Balderrama
Branch Law Firm
Albuquerque, New Mexico

 *Attorneys for the Plaintiff*

Mark G. Worischeck
Shanks Leonhardt
Sanders & Parks, P.C.
Phoenix, Arizona

*--and--*

R. Nelson Franse
Lisa Chavez Ortega
Rodey, Dickason, Sloan, Akin & Robb, P.A.
Albuquerque, New Mexico

 *Attorneys for Defendant Executive Aircraft Maintenance*

Barron Thomas
Barron Thomas Scottsdale, LLC
Scottsdale, Arizona

*Defendant pro se*

Jerry Daniel Herrera
Albuquerque, New Mexico

*--and--*

Greg J. Racca
Racca Law Firm
Albuquerque, New Mexico

*Attorneys for Defendant Steven W. Saunders*